### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| MARY HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL ACTION NO 07-0750-KD-M |
| | ) |
| GUYOUNGTECH USA, INC., and HYO | ) |
| SANG, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This employment discrimination case is before the court on the motion for summary

judgment or, in the alternative, motion for partial summary judgment filed by defendants

Guyoungtech USA, Inc. and Hyo Sang Lee[1] and supporting documents, plaintiff Mary Hill's

response and supporting documents, and defendants' reply (docs. 17, 22, 25).[2]  Upon

consideration of the pleadings, and for the reasons set forth herein, the Court finds that

defendants' motion for summary judgment (doc. 17) is due to be **GRANTED** as to Hill's claims

of race discrimination and retaliation and is due to be **DENIED** as to Hill's claims of assault and

battery against Lee and Guyoungtech.

---

[1]  In the complaint, defendant Hyo Sang Lee is identified as Hyo Sang.  He is identified
as Hyo Sang Lee in the motion for summary judgment.  He will be referred to as Lee.

[2]  Defendants have filed a motion to strike the affidavit of Mary Hill and attachments to
the affidavit as inconsistent with prior testimony.  Defendants also move to strike the other
affidavits and documents submitted by Hill arguing that the evidence is irrelevant or
inadmissible hearsay.  The defendants' motion to strike (Doc. 26) is **DENIED**.  In making its
determination the court has considered only the evidence it deems to be relevant and admissible.

I.      Background

Hill is an African-American female who was hired by defendant Guyoungtech USA, Inc.

(Guyoungtech) as a welder.  Hyo Sang Lee was her supervisor.  Hill alleges retaliation for

reporting sexual harassment[3] in violation of Title VII of the 1964 Civil Rights Act, as amended,

42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981[4] and 42 U.S.C. § 1983 against Guyoungtech.[5]  Hill

alleges assault and battery against Lee and Guyoungtech.


II.     Findings of Fact[6]

Defendant Guyoungtech, located in Castleberry, Alabama, is a welding facility and

supplier of automotive parts for Hyundai Motor Manufacturing Alabama.  Defendant Hyo Sang

Lee was the Production Assistant Manager.  Other employees of Guyoungtech involved in issues

---

[3] The complaint also states a claim of race discrimination.  In her response, Hill concedes
that summary judgment should be granted on her race discrimination claim (doc. 22, p. 22).
Accordingly summary judgment is **GRANTED** on Hill's claim of race discrimination.

[4] "The elements required to establish discrimination and retaliation claims under section
1981 are the same as those required for Title VII claims." Richardson v. Alabama Pine Pulp Co.,
Inc., 2008 WL 2038051, 3 (11th Cir. May 13, 2008) (slip copy) (unreported opinion)
(unpublished opinions are not considered binding precedent, but may be cited as persuasive
authority. Rule 36-2 of the United States Court of Appeal for the Eleventh Circuit) (citing
Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008)); Howard v. BP
Oil Co., 32 F.3d 520, 524 n. 2 (11th Cir.1994).

[5] Hill also brings her claims pursuant to 42 U.S.C. § 1983.  However, there is no evidence
that Guyoungtech or Lee are state actors.  Therefore, summary judgment is **GRANTED** to
defendants as to any claim under § 1983.

[6] The Court has viewed the facts in the light most favorable to Hill. Miller v. King, 384
F.3d 1248, 1258-59 (11th Cir. 2004) (citing Burton v. City of Belle Glade, 178 F. 3d 1175, 1187
(11th Cir. 1999)) (When ruling on a motion for summary judgment, the court "must view all
evidence and all factual inferences therefrom in the light most favorable to the non-moving
party.")

surrounding Hill's employment include Plant Manager Frank Jurjevich, Production Manager

Robert Bowman, Human Resources Manager Carol Bevans, Supervisor Geno (last name

unknown) and Team Leader Charlie Mendoza.

Hill was hired by Guyoungtech as a table top spot welder on July 7, 2006.  Her

probationary and training period was expected to last ninety days.  As a spot welder, Hill took

metal automobile pieces out of a cart, stacked them on a table and welded small nuts onto the

pieces.  Her work days were Wednesday through Saturday and her off days were Sunday through

Tuesday.  Hill worked the second shift from 6:30 p.m. to 6:30 a.m.

The incident

On August 3, 2006, Hill's welding machine malfunctioned and spit more than thirty nuts

onto the floor with the majority landing in front of the welding machine.  Hill's manager, Geno

began to repair the machine.  Hill and co-worker Cathy Arnette stood waiting for Geno to finish.

While Geno was working, Lee came from the office and after looking at the spilled nuts, Lee

told Hill to pick up the nuts.  She told him that they would pick up the nuts at the end of their

shift because there "really wasn't any room for me to squat down there and Gino was working on

the welding machine directly in front of me and each time he let it down sparks would fly".[7]  Lee

squatted down and picked up some more nuts, then stood and told Hill to "pick them up right

now".  Lee then squatted and picked up a few more nuts, stood back up, and told Hill "pick them

up right now" and "slapped [her] on her bottom" on the left side. After that happened, Hill

walked over to the table and told Arnette to get a broom so Hill could clean the nuts from the

---

[7]  Defendants dispute Hill's statement that there was not enough room because Lee was able to pick up the nuts.  Bevans states that Hill told her that she did not think she should have to perform this task.

floor.

By affidavit, Lee states that he tapped Hill on the shoulder to get her attention. He thought, since she had not responded to him when he asked her to pick up the nuts, that she could not hear him because of the noise on the production floor. He stated that he never touched her on the bottom. Arnette gave a statement to Human Resources Manager Bevans that Lee touched Hill on the "side of her leg" to get her attention. The machine was repaired in about thirty minutes and Hill went back to work without incident.

<u>The report of the incident</u>

The morning of August 4, 2006, Hill called the plant and told Bowman that Lee slapped her on her bottom. Hill did not have Bowman's cell phone number and did not know if the number was posted at the plant. Bowman transferred Hill to Jurjevich and she told Jurjevich what had happened. Hill states that Jurjevich told her that "he had told them guys they can't be putting their hands on us."

That evening, when Hill reported for work, she met with Jurjevich and Bevans to explain what happened. Hill asked Bevans if Lee was allowed to talk to her that way and treat her the way he did, and Bevans told her that because of his position he could order her to pick up the nuts but "he didn't have a right to put his hands on [her]." Hill testified that Bevans then told her "that they would have a meeting with all of the Korean employees and have them sign a paper agreeing they would not scream and yell at [employees] and put their hands on [them]." Bevans asked Hill what she wanted the company to do and Hill responded that she did not want Lee to touch her anymore. Bevans told her that it would not happen again. Hill was satisfied with the plan to meet with the Korean managers and have them sign a paper agreeing not to touch the

employees.

Bevans stated that there had been no previous complaints about Lee touching employees. Bevans told Lee not to touch Hill or any employee. Bevans did not consider that Lee acted because of Hill's gender. Also, because Hill only requested that Lee not touch her again, Bevans considered the matter closed.

Failure to report

Hill did not report for work the night of August 5, 2006, because she was ill. Hill called the plant at approximately 5:12 p.m. because she knew the policy required employees to call in an hour before the shift. A Korean male answered, Hill identified herself and asked to speak to Bowman but the man hung up or was disconnected. She did not recognize his voice and did not get a chance to ask his name. At approximately 5:17 p.m., she called the plant again. The voice message system answered and Hill waited for the menu of extensions, then dialed Bowman's extension. She left a voice message with Bowman's answering service identifying herself, her shift, the time she was due, and that she would not be in that day. Hill testified that she knew Geno was her supervisor but she called Bowman because "Robert Bowman was the person that we were told that if we had - - we needed to call in or anything, talk with him." Hill testified that she understood from the policy that if she could not get in touch with Bowman she could call Human Resources "and leave a message." Hill did not call Human Resources.

After Hill called Bowman, she called her co-worker Mary Morrisette and asked her to tell their Team Leader Mendoza that she would not be coming to work that night. Morrisette states that she delivered the message to Mendoza and he said "okay". Hill testified that after her termination, she saw Mendoza as she was leaving the plant. He told her that he had gotten the

message from Morrisette.[8]

### Hill's performance

Bowman stated that "[w]hen [he] observed Mary Hill's work, [he] noticed that she was very slow in performing production processes, including welding. [He] verbally coached Ms. Hill about her being slow in performing production processes." Hill denies that she was slow in performing the production processes, states that she was not trained by Bowman, and denies that Bowman ever coached her. Hill testified that she had no difficulty performing her job and had worked without a welding partner on August 4, 2006, but still completed her work on time.

### Hill's termination

Hill returned to the plant on August 9, 2006, her next scheduled work day, to go back to work and to pick up her check. She met with Bowman in an office and he told her that her "services were no longer needed" because she did not "call in." Hill explained to Bowman that she did call in to report her absence. Bowman told her that he would have to "get with Charlie and see if [she] called in".

Bowman's and Bevans' stated reason for terminating Hill was that she had an unexcused absence and was a no-call no-show for that absence during her probationary period. Bowman also stated that Hill was slow in performing her production process. Guyuongtech also stated that the "the decision to terminate plaintiff based upon her violation of the company's attendance policy was made collectively by Carol Bevans and Frank Jurjevich.".

Hill's "Employee Termination Record" shows that she was terminated for "no call / no

---

[8] Mendoza disputes Hill's testimony and states that he did not receive a message from Morrisette that Hill was not coming to work and did not have this conversation with Hill.

show" and that she was not eligible for rehire.  The following comment was included:

"Slow and unable to produce at required speed.  Has been repeatedly warned and has refused to

do job, manager said at times.  No call - no show".  The document is silent as to Hill's

"unexcused absence".

In a letter from Bevans to Ms. Leo at the Equal Employment Opportunity Commission,

Bevans states that Hill

> was an employee that was unable to perform her work to company standards. She
> was not terminated for this; she was terminated for not following the policy set by
> the company for attendance. . . . We did not contest Mary Hill's unemployment
> claim because we felt that her inability to do her job resulted in her frustration
> with the company and perhaps that was the reason for her no call/no show.  .

In a letter to Jeanne Walker, an EEOC investigator, Bevans explained that,

> I would like to note that Ms. Hill was not terminated for any reason other than her
> attendance. . . .  Ms. Hill was probably going to be replaced but a decision had not
> been made.  She then, on 8/6-8/5 did not show up and did not call.  She did not
> show up again and we did not hear further from her.

Guyoungtech's policies

Hill was required to attend an employee orientation before she began work and she

received the Employee Handbook on July 10, 2006.  At the time she received the handbook, Hill

understood that there was a policy against harassment and understood she was required to

contact Human Resources if she felt she was being harassed.  The parties do not dispute that Hill

followed company procedures when she reported Lee's conduct to Bowman.

In regard to absences, Guyoungtech's Employee Handbook contains the following Call-

In Procedure:

> We recognize that there may be times when your absence or tardiness
> cannot be avoided. If you cannot come to work, or if you are going to be late, it is
> important that you follow this procedure:

　　　　　1.  Telephone Guyoungtech at (251) 966-4880 and tell your supervisor the reason for your absence or lateness and when you will be back to work.  This should be done at *least* one (1) hour before your regular start time.

　　　　　2.  When you call in, provide your supervisor with the following information: (a) the reason for your absence; (b) when you expect to return; and (c) a phone number where you can be reached.

　　　　　3.  If you are unable to reach your supervisor directly, ask to speak to someone in the Human Resources department and provide them with the information noted above.  It is important that you [keep track] of the name of the person you spoke to and the time you called.  Should you be unable to reach anyone directly, be sure that you leave a message for your supervisor using Guyoungtech's voicemail system.  If you are leaving a message, you must be available for a return phone call.

Hill was provided a copy of the attendance policy for probationary employees which states that

"if a probationary employee receives 1 unexcused absence he/she will be reviewed for

immediate termination."  Because Hill was able to leave a voice message for Bowman, she did

not interpret the policy to require that she also contact Human Resources.


III.  Discussion

　　　A. Summary Judgment Standard

　　　Summary judgment should be granted only "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).[9]  The party seeking summary judgment bears "the initial burden to show the district court,

---

[9]  Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

　　if the pleadings, the discovery and disclosure materials on file, and any affidavits

by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (footnote omitted)). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004).

The Eleventh Circuit has expressly rejected the contention that summary judgment should seldom be used in employment discrimination cases because such cases "involve examination of motivation and intent". Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting Chapman v. AI Transport, 229 F. 3d 1012,1026 (11th Cir. 2000) (en

---

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

banc)).  Rather, "the summary judgment rule applies in job discrimination cases just as in other

cases.  No thumb is to be placed on either side of the scale." Id.

   B.  Analysis

      Hill alleges that she was fired in retaliation for reporting Lee's sexual harassment.  "A

prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged

in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3)

there was a causal connection between the protected activity and the adverse employment

action." Id., (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001));

Gupta v. Fla. Board of Regents, 212 F.3d 571, 587 (11th Cir. 2000).  Hill has proffered no direct

evidence of retaliation.  Because her claim is based upon circumstantial evidence, the

burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93

S.Ct. 1817 (1973), applies.  However, the ultimate burden of proving actual, intentional

retaliation remains with Hill. See Texas Department of Community Affairs v. Burdine, 450 U.S.

248, 101 S.Ct. 1089 (1981).  Under this framework, Hill must first establish "a prima facie case

of discrimination, which creates a rebuttable presumption that the employer acted illegally."

Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).  Defendants "then bear[]

the burden to show a legitimate and non-discriminatory reason for the employment action.  If

this burden is met, then the presumption is rebutted and the burden shifts back to [Hill] to show

the proffered reason was a pretext for discrimination." Carter v. Bowman, 2006 WL 531294

(11th Cir. 2006).

      Defendants seek summary judgment on basis that Hill cannot establish a prima facie case

of retaliation because she has failed to offer sufficient evidence to establish either participation

in a protected activity or that there was a causal connection between her protected activity and

her termination.  In regard to the participation element, defendants argue that Hill cannot make a

prima facie case under the opposition clause because under existing substantive law in the

Eleventh Circuit identifying what acts constitute severe and pervasive sexual harassment, Hill

could not have objectively believed that she had been sexually harassed or made subject to a

hostile environment when Lee touched her on one occasion to get her attention on a loud

production floor.

Hill responds that she had a good faith belief that the activity complained of was a

protected activity, i.e., sexual harassment, because she reported that she was touched on a part of

the female anatomy.[10]  Hill argues that the touching was not to get her attention, but was sexual

because the male employees had been touching the female employees and had been told to stop.

Title VII prohibits retaliation because an employee "has opposed any practice made an

unlawful employment practice by [Title VII], or because he has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing".  42 U.S.C. §

2000e-3(a); Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).  Hill's claim of retaliation

falls under the opposition clause since an EEOC proceeding had not been initiated.  In Butler v.

Alabama Dept. of Transp.,  - - - F. 3d  - - -, 2008 WL 2901768 (11th Cir. 2008), the court

explained the requirements to establish an opposition clause claim as follows:

> We previously have recognized that a plaintiff can establish a
> prima facie case of retaliation under the opposition clause of Title

---

[10]  For purposes of summary judgment only, the court will view the facts in the light most
favorable to Hill and accept as true Hill's statement that she was touched on her buttocks as
opposed to Lee's statement that he touched her on the shoulder or Arnette's statement that Hill
was touched on the leg.

> VII if he shows that he had a good faith, reasonable belief that the
> employer was engaged in unlawful employment practices. It is
> critical to emphasize that a plaintiff's burden under this standard
> has both a subjective and an objective component. A plaintiff must
> not only show that he subjectively (that is, in good faith) believed
> that his employer was engaged in unlawful employment practices,
> but also that his belief was objectively reasonable in light of the
> facts and record presented. It thus is not enough for a plaintiff to
> allege that his belief in this regard was honest and bona fide; the
> allegations and record must also indicate that the belief, though
> perhaps mistaken, was objectively reasonable.

Butler, at *4 (quoting Little v. United Technologies, Carrier Transicold Division, 103 F.3d 956,

960 (11th Cir.1997)).

Thus to prevail on this element of her prima facie case, Hill must show both that she

"subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful

employment practices" and that her "belief was objectively reasonable in light of the facts and

record presented." Butler at *4.  Hill does not need to prove that the underlying conduct,

slapping her on the buttocks, was actually unlawful sexual harassment to overcome the motion

for summary judgment, but she must establish that her belief that she was being sexually

harassed was objectively reasonable.  Further, under this objectively reasonable belief

requirement, she is charged with knowledge of the current law of sexual harassment and her

belief is "measured against existing substantive law." Clover v. Total System Services, Inc., 176

F.3d 1346, 1350 (11th Cir. 1999); Butler at *5 ("While a plaintiff can prevail on a retaliation

claim based on opposition to an employment practice that is not actually unlawful, we have to

consider the controlling substantive law in this circuit when we assess whether a plaintiff's

mistaken belief is objectively reasonable.")  Moreover, "[w]here binding precedent squarely

holds that particular conduct is not an unlawful employment practice by the employer, and no

decision of this Court or of the Supreme Court has called that precedent into question or

undermined its reasoning, an employee's contrary belief that the practice is unlawful is

unreasonable.  Butler at *5.

Under Eleventh Circuit precedent, to establish a sexual harassment claim based on hostile

work environment,[11] a plaintiff must show that: (1) he or she is a member of a protected group;

(2) was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the

harassment was so severe or pervasive as to alter the conditions of environment and create a

hostile or abusive work environment; and (5) there is a basis for employer liability. Gupta, 212

F.3d at 583 (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999)).  Harassment

violates Title VII "[w]hen the workplace is permeated with 'discriminatory intimidation,

ridicule, and insult,' that [] is 'sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc.,

510 U.S. 17, 21, 114 S.Ct. 367 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S.

57, 65, 67, 106 S.Ct. 2399 (1986)).

In evaluating whether conduct is severe and pervasive enough to alter the terms and

conditions of employment, the Eleventh Circuit Court of Appeals has identified the following

factors which should be considered: "(1) the frequency of the conduct; (2) the severity of the

conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive

utterance; and (4) whether the conduct unreasonably interferes with the employee's job

performance." Mendoza, 195 F.3d at 1246.  The "standards for judging hostility are sufficiently

---

[11]  Hill has not raised any argument that she was subject to quid pro quo sexual
harassment. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 751, 118 S.Ct. 2257, 2264
(1998) (identifying the two types of discrimination based on sex).

demanding to ensure that Title VII does not become a general civility code." Faragher v. City of

Boca Raton, 524 U.S. 775, 788 (1998).  Both the Supreme Court and the Eleventh Circuit Court

of Appeals have held that the severity and pervasiveness of "harassing conduct" is judged "under

the totality of the circumstances." Mendoza, 195 F.3d at 1246.

It is well settled in this circuit that not all allegedly derogatory or harassing behavior

constitutes actionable sexual harassment. See Gillis v. Georgia Dept. of Corrections, 400 F.3d

883, 888 (11th Cir. 2005) (recognizing that Title VII is "neither a general civility code nor a

statute making actionable the ordinary tribulations of the workplace").  Although the conduct

opposed need not "actually be sexual harassment . . . it must be close enough to support an

objectively reasonable belief that it is." Clover, 176 F.3d at 1351 (holding that the alleged

conduct of making frequent visits without any "business purpose," calls on personal beepers, and

frequently asking an employee into the hall to talk, "misses the mark by a country mile."

(emphasis added)); see also Henderson v. Waffle House, Inc., 238 Fed. Appx. 499, 502 (11th

Cir.  2007)[12] (affirming summary judgment because alleged comments by a co-worker such as

calling the plaintiff "Dolly," laughingly telling the plaintiff while looking at her new shirt "you

just look like you're going to burst," telling the plaintiff they did not make aprons "big enough

for people with boobs" like hers, telling the plaintiff not to stand to close to him because it made

him nervous and "told her he would get in trouble if he said why," and pulling the plaintiff's hair

and telling her it was greasy, were "insufficient to create a genuine issue of material fact as to

whether harassment was sufficiently severe or pervasive so as to alter the terms and conditions

---

[12]  All case cites to Fed. Appx. are unpublished opinions.  Unpublished opinions are not
considered binding precedent, but may be cited as persuasive authority.  Rule 36-2 of the United
States Court of Appeal for the Eleventh Circuit.

of employment.").

In <u>Mendoza</u>, the alleged harasser told plaintiff that he was "getting fired up," rubbed his

hip against the plaintiff's hip while touching her shoulder and smiling, twice made a sniffing

sound while looking at the plaintiff's groin area and once made a sniffing sound without looking

at her groin, and constantly followed and stared at plaintiff in a "very obvious fashion." 195 F.3d

at 1247.  In each of these cases the Eleventh Circuit concluded that the allegations were

insufficient to state a prima facie case of harassment.  Specifically, the court determined that the

conduct about which the plaintiffs complained was not severe and pervasive such that it altered

the terms and conditions of employment.

<u>Mitchell v. Pope</u>, 189 Fed. Appx. 911 (11th Cir. 2006), is an additional example of

outrageous conduct which does not make the cut for legally actionable sexual harassment in the

Eleventh Circuit.  In <u>Mitchell</u> the plaintiff alleged:

> Plaintiff contends that Overbey: (1) tried to kiss her after the 1999 Sheriff's
> Department Christmas party and called her a "frigid bitch" when she refused, (2)
> showed up at places Plaintiff was "staking out" in December 1999 and told her
> "you must be working out" and "you sure do look fine," (3) appeared several
> times in her driveway in January 2000, once drunk, when he told Plaintiff's son
> that he loved Plaintiff, (4) suggested she wear certain jeans and commented "your
> ass sure does look fine," (5) told her "you can just walk into the room and I'd get
> an erection," (6) stood on his tiptoes to look down her shirt, (7) rubbed up against
> her, whispered in her ear, and put his arm across her chest, (8) chased her around
> the CID office, (9) once picked her up over his head in the CID office, (10) asked
> her over the Sheriff's Department telephones if she was dressed or naked, (11)
> opened the door to the women's bathroom and turned the lights off and on when
> Plaintiff was inside, (12) simulated "humping" another female employee with that
> employee's consent, (13) made sexually derogatory remarks and gestures about a
> female magistrate judge, and (14) referred to Sheriff Pope as a "big eared pencil
> dick motherfucker." In March 2000, Plaintiff and Overbey attended a conference
> in Alabama. Overbey told Plaintiff that the hotel had made a mistake and that they
> would have to share a room. Overbey slept on the floor. The next night, after
> Overbey got his own room, he tried to convince Plaintiff to go to the hotel hot tub
> with him and other conventioneers. He called her a "frigid bitch" when she

refused; when she confronted him the next morning and threatened to tell the
Sheriff if Overbey did not leave the conference, Overbey cried, promised he
would be "good," and left. And Plaintiff explained that, in June 2002, before she
was scheduled to work security at a private golf tournament given by a strip club
owner, Overbey told her and other officers about another golf tournament hosted
by this owner where strippers acted as caddies. Overbey said that the owner
directed the strippers to place golf balls into their vaginas and to squirt them onto
the green.

Id. at 914, n. 3. In concluding that plaintiff failed to present a prima facie case of hostile

environment sexual harassment the Court opined, in part:

Although Overbey's reprehensible behavior only can be described as crass and
juvenile, we accept that this behavior-given its relative infrequency-is not the
kind of "severe" harassment necessary for liability to attach under Title VII.
Overbey's conduct is more comparable to the conduct in Gupta v. Florida Bd. of
Regents, 212 F.3d 571, 584-86 (11th Cir. 2000), and in Mendoza, 195 F.3d at
1247, which we concluded was not objectively severe or pervasive. And no
evidence exists that Overbey's behavior unreasonably interfered with Plaintiff's
job performance. To the contrary, the evidence indicates that Plaintiff's health
problems were the greatest hindrance to her job performance and led to her
ultimate confrontation with Pope and her subsequent resignation. In short,
Plaintiff has not shown a claim of actionable hostile work environment under
Title VII.

Id.

Dar Dar v. Associated Outdoor Club, Inc., 248 Fed. Appx. 82 (11th Cir. 2007), presents

similar facts to the present case. In Dar Dar, "[t]here were two sexually inappropriate comments

and two incidents of intentional buttocks touching over the course of 22 months." Id. at 85. The

court found that the district court did not err by finding that these incidents were not sufficient to

create a hostile work environment. The court explained,

The two instances of employees touching Dar Dar's buttocks-in one of which the
toucher was a woman in her seventies-and the two risque comments are no more
serious than the conduct we held did not establish a hostile work environment in
Gupta. As the Supreme Court has stated, "simple teasing, offhand comments, and
isolated incidents (unless extremely serious) will not amount to discriminatory
changes in the terms and conditions of employment." Faragher v. City of Boca

16

Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citation omitted).

Id. at 86.[13]

To establish that she had an objectively reasonable belief that she had been sexually harassed, Hill relies on her version of the incident, i.e. that Lee slapped her on the buttocks. However, Hill testified that prior to the incident with Lee she had not experienced any problems at work.  Hill also relies on an incident where Hill had previously witnessed a different supervisor yell at co-worker Renada Grace and then hit Grace on the hand.[14]  Assuming these incidents occurred as described by Hill, they could not reasonably be described as "extremely serious" or pervasive under the above cited Eleventh Circuit law.[15]   The court agrees that if the incidents occurred as described by Hill, they could be reasonably considered, both objectively and subjectively, to be degrading.  However, degrading acts and sexual harassment are obviously not synonymous terms under Eleventh Circuit case law.

Hill relies upon the decision in Gupta, wherein the court held that although Gupta's

---

[13]  Dar Dar was decided after Hill's incident, so she can not be charged with knowledge of this specific application of the law.  However, Dar Dar did not break new ground but rather is illustrative of the Eleventh Circuit's view of the high level of egregiousness required to support a sexual harassment claim.

[14]  Defendants move to strike Grace's statement as immaterial and irrelevant to Hill's claim (doc. 26).  The motion is denied.  The court finds the evidence to be relevant to the determination of whether Hill had an objectively reasonable belief that she had been sexually harassed.

[15] Hill also presents evidence that after she made her complaint to the Plant Manager, Frank Jurjevich, he stated that he had told the guys that "they can't be putting their hands on us." While this statement may be relevant to whether a hostile environment existed, this statement is not relevant to whether Hill had an objective belief that she had been sexually harassed at the time she complained, as Jurjevich's statement was made after Hill had initiated the complaint. However, even if this evidence was considered the court's determination would be the same.

17

allegation of sexual harassment were insufficient to support a sexual harassment claim, the

allegations were sufficient to support her prima facie case of retaliation. Gupta, 212 F.3d 571.  In

Gupta, the alleged harasser allegedly suggested lunch at Hooters, told Gupta that she was

"looking very beautiful," called her at her home, unbuckled his pants and tucked in his shirt in

front of her, stared at her twice, touched her ring and kept asking her to lunch, placed his hand on

her knee, and touched the hem of her dress.  Id. at 584-86.  Hill's experience is not comparative

with Gupta's.  Unlike Gupta, Hill simply did not experience repetitive treatment which could

objectively be considered sexual harassment.

In sum, "the totality of the circumstances", show that Hill received a single slap on the

buttocks by a manager she had never met before, unaccompanied by any words except an order

for her to pick up the spilled nuts from the floor.  Lee's act of slapping Hill on the buttocks in an

effort to make her comply with his demand is certainly not condoned by this court, however, it

was not an act which reasonably could be perceived as sexual harassment under Eleventh Circuit

law.  Accordingly, defendants' motion for summary judgment is **GRANTED** and defendants are

entitled to judgment as a matter of law on Hill's claim of retaliation.

2.      Assault and Battery

Hill claims that both Guyoungtech and Lee should be held liable for assault and battery

based on Lee swatting her buttocks.  As to Lee, in order to prove an assault-and-battery claim,

Hill must establish the following:  "(1) that the defendant touched the plaintiff; (2) that the

defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or

offensive manner." Harper v. Winston County, 892 So.2d 346, 353 (Ala. 2004); Ex parte Atmore

Community Hosp., 719 So.2d 1190, 1194 (Ala. 1998).  "A successful assault becomes a battery,

which consists of the touching of another in a hostile manner." Wright v. Wright, 654 So.2d 542,

544 (Ala.1995) (citing Surrency v. Harbison, 489 So.2d 1097, 1104 (Ala.1986) and Singer

Sewing Machine Co. v. Methvin, 184 Ala. 554, 561, 63 So. 997, 1000 (1913)).  A key element of

the tort of battery is that "the touching was conducted in a harmful or offensive manner." Atmore

Community Hosp., 719 So.2d at 1194.  The court finds that issues of material fact remain that

should be resolved by a jury as to whether Hill was hit on the buttocks and whether this was

done in an offensive manner.   Accordingly, summary judgment is **DENIED** on this claim.

Hill also claims that Guyoungtech should be held responsible for Lee's assault on her.

"An employer is liable for the intentional torts of its employee if: (1) the employee's acts are

committed in furtherance of the business of the employer; (2) the employee's acts are within the

line and scope of his employment; or (3) the employer participated in, authorized, or ratified the

tortious acts." Ex parte Atmore Community Hosp., 719 So.2d 1190, 1194 (Ala. 1998).

Defendants argue that Guyoungtech did not ratify Lee's conduct because Lee's alleged

touching of Hill's bottom, if true, was sexual conduct not committed in furtherance of

Guyoungtech's business and not in the line and scope of his employment.  Defendant

Guyoungtech also argues that the undisputed facts establish that Guyoungtech took action as

soon as it was notified and since it made prompt and appropriate steps, there was no ratification.

In response, Hill argues that the conduct was ratified because Guyoungtech fired her for

reporting the conduct.

The court finds that there is sufficient evidence to create a material issue of fact as to

whether the alleged hitting of Hill was in furtherance of Guyoungtech's corporate purpose, i.e. to

have the floor cleaned of debris.  The court also finds that there is sufficient evidence from

which a reasonable factfinder could determine that Guyoungtech's act of firing Hill was a

ratification of Lee's conduct.  Accordingly, the defendants' motion for summary judgment is

**DENIED** on this claim.


IV.     Conclusion

For the reasons set forth herein, summary judgment is **GRANTED** as to Hill's claims of

race discrimination and retaliation. Summary judgment is **DENIED** as to Hill's claims of assault

and battery against Lee and Guyoungtech.

**DONE** and **ORDERED** this the 26th day of August, 2008.


        **s / Kristi K. DuBose**
        **KRISTI K. DuBOSE**
        **UNITED STATES DISTRICT JUDGE**